Judge Marshall
delivered the Opinion of the Court,
This bill was filed by a portion of the heirs of Atkinson Hill, deceased, against his executor, Wilford Lee, and the remaining heirs, for the purpose of coercing a settlement and distribution of the decedent’s estate.
The executor sets up a partial settlement made with the County Court, a short time before the commencement of the suit; and, in an amended answer, presents and relies on a second settlement, made under a new or *38 der of the County Court, while the suit was pending. He also alleges that he had made payments to the several distributees, as early and as rapidly as the condition of the estate would permit, and that he had in fact overpaid the complainants, taking into consideration the advancements received by them.
An executor has, in general, no right to charge the costs which he may incur in defending a suit brought against him, to coerce a settlement of his accounts, to the decedents estate—as the effect might be to diminish the distributable portions of heirs who did not approve the suit, but were def’ts with the ex’or, and if he is successful, and recovers costs, in the suit, to give him double pay thus far. The decree should give costs against those who ought, in justice, to pay them. And the ex’or may retain them, in making distribution; but he should not, in general, be allowed to charge or collect such costs, but by virtue of a decree in his favor.
In the progress of the cause, an auditor was appointed to examine and state the executorial accounts. And on the hearing, the complainants were severally decreed to pay to the executor, the sums overpaid to them, respectively, with interest from the date of the auditor’s report and the costs of the present suit. From this decree the complainants prosecute a writ of error.
First. The first objection to the decree which seems to require notice, is, that in the accounts of the executor with the estate, he is credited with all expenses incurred by him in the defence of this suit, including charges for his own personal attendance, and amounting in all to a considerable sum, which is allowed by the decree in adjusting the account, and that the same sum, or a large portion of it, is again included in the decree for costs, in his favor, against the complainants. The executor is thus doubly paid the amount of the costs, allowed in the general account; and those heirs who are defendants with him are compelled to contribute to the reimbursement of expenses occasioned without their consent and against their will. Besides, the right of an executor to recover his costs expended in a suit for a settlement and distribution, might depend upon the balance appearing on a proper statement of his accounts,, and as the balance itself might be affected by the introduction of the costs as an item in his favor, it seems clearly improper to allow him, as the means of producing a balance in his favor, an item to which he is not entitled but in consequence of such favorable balance.
It cannot be proper in any case, to allow the executor double payment of his costs, as this decree has done;and as must be done in all cases where his costs (in a suit for a settlement) are first allowed as credits in his accounts, and then decreed to him without discrimination in the form of costs. We are also of opinion, for reas *39 ons, some of which have been stated, that it is not in general proper to introduce the costs of the suit into the general settlement, but that the costs of the executor in the particular suit,, or such portion of them as he is entitled to recover, should be decreed to him as costs, and against the proper party, to be retained, if necessary, out of the funds in his hands belonging to such party.
An ex’or should not be credited for fee-bills in suits brought by him for the benefit of the estate, unless he is charged with the costs recovered, or shows that he has been unable, by due diligence, to collect them. The accounts should be so stated (specifying the suits &c.) as to enable the court to see how the facts stand, in that respect, and unless it appears that the fee bills were in cases where the judg’ts were not, & could not be, collected, the items should be rejected.
It is the duty of an ex’or, whenever a demand against the decedents’ estate is presented, to endeavor to ascertain by due enquiry, whether it is just, or not. He may pay any demand, upon satisfactory evidence that it is justly due, without suit; but if there is no other evidence, (as a judg’t, bond &c) he should require the oath or affidavit of a disinterested person, whom he should interrogate, as to the circumstances, and the witness’ means of knowing them; and, if no ground for suspicion is discovered, the demand may be paid upon that evidence; but the ex’or may resist until judg’t is recovered against him, and ought to, if he suspects the fairness of a demand. For all the payments made upon such evidence, he will be entitled to cred its, unless it is shown, that they were unjust, and that there was a want of good faith, or of proper vigilance, on his part.
*39 Various other objections, of which some seem to he well founded, are taken to the credits allowed to the executor; but as the decree must be reversed for the error already noticed, it is not deemed necessary to do more than to classify the objectionable items, and lay down a few general rules which should govern the Chancellor in a future re-adjustment of the accounts.
Second. The executor is credited by numerous feebills and receipts for costs, in suits in which judgments for costs were recovered by him; and it is objected, that he should not have been so credited, unless he had either been charged with the same costs, as recovered by judgment and execution, or had shown that, after due diligence, he had been unable to collect them. The principle assumed in the objection is obviously correct. The executor who claims credit for feebills in cases in which he has obtained judgment for costs, should show that he has charged himself with the same costs, or that he has been unable to collect them; and his accounts, as stated by commissioners or auditors, should so present the facts, that the revising tribunal might distinctly see that this obvious rule of propriety has been complied with.
Third. It also seems essential to the proper responsibility of executors, and to the safety of the estates committed to their charge, that no feebill or other receipt for costs should be allowed as credits, unless it be made plainly to appear in what particular suit the costs were incurred. A compliance with these requisitions on the part of executors, is easy, and should not be dispensed with.
Fourth. An objection is made to the nature of the proof upon which credits are allowed to the executor, for the payment of alleged demands against the decedents’ estate. It is contended that, in accounting before *40 the Chancellor, or his auditor, an executor should be held to strict legal proof of the existence and genuineness of the debt, and of the amount actually paid in discharging it; that the mere affidavit of a disinterested person, is not sufficient evidence of the former, nor the receipt of the creditor of the latter. These fire points of serious importance to executors, and other fiduciaries of a like character, as well as to the persons interested in estates of which they have the management.
Receipts given by creditors of an estate, to the executor, are evidence, as between the parties to them, of payments to the amounts specified; and are also; prima facie; evidence to the same effect, between the ex'or and creditors and distributees of the estate-subject to be rebutted by other evidence, or by the admission of the ex'or-who may be required to answer on oath, as to the sums actually paid; and for those sums only can he be allowed credit. But the sum specified in a receipt must be allowed; unless it is proved, that the receipt was obtained by the payment of a less sum.
*40 The real question upon the first point is, what evidence must an executor require of a demand against his testator before he may safely pay the demand? If he must have strict judicial proof then, as to all demands resting in parol, or on implied assumpsits, he must incur the delay and expense of suits, though he be reasonably certain of having to pay the costs. If he may pay upon such evidence as will satisfy the mind of an honest fiduciary, intent only upon executing his trust for the benefit of the parties interested, with as little delay and at as little expense as is practicable then, of course, such evidence must at all times be a sufficient justification of the payment, until it is shown that the demand was not real, and that, by reasonable vigilance, he might have ascertained such to be the fact. It would often be a considerable burthen upon estates, and a sensible disadvantage to creditors and distributees, if all the little demands which may be unliquidated at the death of an individual, must be increased by the costs of a judicial investigation, before the executor or administrator can safely pay them. The laws of this State furnish no compendious and cheap method of ascertaing these demands; and it would seem to be allowable, as well with a view to the interests of all concerned, as to that confidence to which these officers are at least prima facie entitled, that where a small demand is supported by the affidavit of an indifferent person, and the executor, upon reasonable enquiry, finds no means of disproving it, and no ground to suspect its justness, it may be paid. This coarse has been adopted and sanctioned by the usage of the country and of the Courts having the immediate supervision of executors, and it has not, so far as we know, been *41 expressly discountenanced by this Court. In such a case, the long continuance of the usage is itself no inconsiderable argument in favor of the practice. And it seems to us, that the danger of admitting this degree of evidence to be, in the first instance, sufficient for the executor, is outweighed by the inconvenience of requiring that he shall either submit to suits in all such cases, and thus furnish himself with a record voucher for every. payment, or that he shall, whenever called to a settlement, be prepared with his witnesses, at whatever expense or trouble, to prove every such item in his accounts.
But these extra-judicial vouchers can only be considered good in the absence of all testimony tending to impeach the fairness of the particular transaction, or the general fidelity of the executor —of whose duties, good faith, including proper diligence, is the essence and the measure, and is in fact, all that the law attempts to enforce. The guarantees which it provides for this purpose, in his bath and bond of office, in the open exhibition and investigation of his accounts and vouchers, in his examination under oath, which should generally be resorted to in every settlement, ill the knowledge which ell persons interested may be supposed to possess; or to be able easily to acquire, of the affairs which have passed through his hands; and ill the responsibility to' which he is liable for any breach of fidelity — seem to afford a reasonable security for all concerned. They are at least sufficient to entitle him; in the first instance, to the presumption of good faith in the performance of his duties. And it appears to us, under all these considerations,that until the Legislature choose to provide some convenient and expeditious mode to which executors &c. may resort for ascertaining the unliquidated demands against the decedent’s estate, they may pay demands which they believe, upon due enquiry, to be correct, and which are Supported by affidavit; and the vouchers thus furnished, should entitle them to a credit for the amount paid, unless it be made to appear, that the demand was not just and that the executor had failed to exercise a reasonable vigilance in relation to it. But the executor cer *42 tainly is not bound to pay upon the mere production of an affidavit, and should not pay, without interrogating the affiant as to the extent and means of his knowledge and the circumstances affecting the extent and validity of the demand, unless from other sources he has good reason to believe that it is just.
There is no universal rule for fixing the compensation to ex’ors. Five per cent, upon moneys received and paid out, is generally an approved allowance. In some extraordinary cases, additional charges for expenses, per diem attendance &c. may be proper; but such charges should be moderate and should be rigidly scrutinized, and allowed only when extraordinary services have been required—of which satisfactory evidence should he furnished by the ex’or. The running up of accounts for attending courts, magistrates’ trials &c. is not to be encouraged.
*42 As to the second point of the objection now under consideration — there is no doubt, that the receipt of the creditor is evidence of the payment of the amount specified, as between him and the executor, and all others concerned; and we are of the opinion, that it should be taken as prima facie evidence of the amount paid as between the executor and distributees or creditors; subject, however, to be rebutted by other evidence, or by the examination of the executor himself—to which, in making the settlement, resort may be had.
It is well established, that the executor is entitled to a credit for nothing more than he has actually paid. He should of course demand nothing more in his accounts; and the real amount ought to be expressed in the receipt itself. It is to be presumed, that this is done. And if the contrary sometimes happens, the party interested in showing it should, as he generally may, adduce some evidence to prove it. Much of the reasoning just used is applicable to this point, and need not be repeated.
Fifth. It is alleged that the amount allowed to the executor, for his trouble and services, is extravagant and unauthorized. It consists of five per cent. on about twelve thousand dollars, which passed through the executors hands, and nearly as much more for travelling expenses, and per diem charges, for attending courts, magistrate’s trials, appraisements and sales, pertaining to estate; besides which, the executor seems to have paid and been credited by fees to clerks, cryers &c. No precise rule has been, or, as we suppose, can be, laid down for determining, in all cases, the proper compensation to executors. But the allowance of five per cent. Upon all sums collected and paid out, and the additional allowance tor all the time and expenses consumed m collecting and paying, has very much the appearance of compensating the executor for his services, in gross, and *43 then paying him again for the same services in detail. We do not, however, mean to decide, that allowances of this character should be permptorily rejected, even in ordinary cases; but is obvious, that unless they are subjected to a rigid scrutiny, they may be the occasion, not only of great delay in closing the business of estates, but of disproportioned and ruinous burthens upon them.
An ex’or cannot he allowed to charge the; estate for his time and personal expenses incurred about a suit against him, to coerce a settlement: what he can obtain a decree against the def’ts for, is all he is entitled to.
With regard to the allowances for the personal attention and expenses of the executor in defending this suit; for the reasons already stated in relation to the costs of the suit, we are of opinion, that they were improperly introduced into the general accounts of the executor, and that, if he was entitled to receive compensation for them at all, it should have been decreed only against those by whom they were occasioned. But as they cannot be properly said to have arisen in the management and administration of the estate, but in defending a demand which is essentially personal, we do not perceive that he is entitled to remuneration for his time and personal expenses, more than other suitors who may be wrongfully subjected to the trouble and expense of unjust litigation.
With regard to the other allowances of this character, we are of opinion that, although the condition of the estate of Hill might have authorized some allowance beyond the usual commission of five per centum, either in the shape of an additional per centage, or of charges for attendance. Such allowance should have been founded exclusively upon the necessity of extraordinary attention and expense in the management of the estate, and should have been as nearly as possible commensurate with that necessity. The evidence as to the necessity, and as to the actual rendition and value of the services charged for in this case, is not sufficiently definite and certain to authorize the allowance of the entire sum demanded, A faithful executor should not be the loser by an honest attention to the business and interests of the estate; but no prospect of gain should be held out, which might induce one who is unfaithful to burthen the estate with charges for trouble or expenses which were never incurred, or which might obviously have been dispensed *44 with, or which may have been devoted, to his, own purposes. Without further evidence on these items, we should think that an allowance of six or seven per cent, upon the amount of the estate administered, would be amply sufficient to compensate the executor for all proper and necessary services in this case. And we think, the running up of accounts for travelling to and attending on courts, magistrate’s trials &c. is not to be encouraged; nor should such accounts be allowed, except when their propriety is made fully apparent.
A settlement of an executor’s accounts in the county court, is prima facie, evidence in a chancery suit afterwards commenced; no county court settlement, made after the commencement of a suit in chancery, (whether there had been any previous settlement or not,) is entitled to any weight, in the chancery suit.
In a suit by heirs against an ex'or, for a settlement, he proves over payments to the heirs, and brings them in debt, for which he has a decree: the balance in his favor, not much exceeding his charges for services, he is not entitled to interest on it.
Sixth. It i§ difficult to ascertain what weight was given to the settlement with the County Court, made after this suit was commenced, and which was submitted to the auditor for his consideration. It is, however, well settled, that it was entitled to no influence whatever. The fact that the County Court had made a previous partial settlement with the executor, did not, as seems to have been supposed by the counsel, give it such possession of the subject as to make a further settlement, after the institution of this suit, evidence between the parties. Saunders’ Heirs vs. Saunders’ Executors, 2 Litt, 315-16; Kellar's Executors vs. Beelor, 5 Mon. 577; Blakey's Executors vs. Blakey, 3 J. J. Mar. 681, The first settlement, however, was prima facie evidence in this suit, and it is not intended by this opinion to impugn its effect as such, except, with regard to the allowance made to the executor for his services.
Seventh. It was erroneous to decree interest upon the balances found to be due from the complainants to the executor, for over payments,. They grow principally, if not entirely, out pf the allowances made to the executor personal services &c. on which he 19 not entitled to interest. Their existence, as well as amount, was dependent upon the final settlement before the Chancellor And the over payments, if they may be so called, were made by the executor in his own wrong,
It is proper to remark, that we do not perceive that the executor, Lee, has been charged with fifty pounds, as provided for by the agreement of the parties, exhibited by the complainants, and filed in this cause; nor do we perceive, that the balance in his hands, due to Mrs. Hill, *45 the decedent’s widow, was added to the fund for distribution after her death. We may, however, have overlooked these items, as they were not material to any of the questions which have been made, and it has not been our purpose to scrutinize the accounts with a view to the ascertainment of the precise balances.
The omission to charge Wilford Lee with the value of the negro boy Travis, given to him by the testator, in his lifetime, was not, in our opinion, erroneous. For although this was undoubtedly an advancement, yet the agreement referred to, purports to enumerate the advancements which are to be taken into the account, and the omission to state this one must be considered as excluding it for which the death of the boy, soon after the gift, may account, and for which, also, a compensation may have been obtained in other parts of the agreement, which was a compromise of various interests and questions pertaining to the estate.
But for the errors before noticed, the decree is reverse ed, and the cause remanded for a re-adjustment of the accounts of the executor, and for further proceedings conformable to the principles of this opinion,